## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Tridia Corporation | § | |
| | § | |
| | § | |
| Plaintiff | § | C.A. No. 1:15-cv-01245-LMM |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ScreenConnect Software LLC and | § | |
| ConnectWise IT, Inc. | § | |
| | § | |
| Defendant. | § | |
| | § | |

## **DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     FACTUAL BACKGROUND........................................................2

   A.   The '598 Patent. ...............................................................2

   B.   The Specification and Prosecution History..........................2

   C.   Representative Claim 63 Is Abstract...................................5

III.    ANALYSIS ...............................................................................7

   A.   Legal Standard..................................................................7

   B.   The '598 Patent Fails the *Alice* Test ................................10

        1.   The '598 Patent Fails Step 1 of the *Alice* Test:  All
             Asserted Claims Are Directed to An Abstract Idea................11

        2.   The '598 Patent Fails Step 2 of the Alice Test:  The
             Asserted Claims Have No Inventive Concept .......................17

IV.     CONCLUSION.........................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
728 F.3d 1336 (Fed. Cir. 2013) ....................................................................7, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) ................................................................................*passim*

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.,*
687 F.3d 1266 (Fed. Cir. 2012) ..........................................................................17

*Bascom Research, LLC v. LinkedIn, Inc.,*
No. 12-CV-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) .....................9

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) ............................................................................9

*California Inst. of Tech. v. Hughes Commc'ns Inc.,*
59 F.Supp.3d 974, 993 (C.D. Cal. 2014) ...........................................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) .....................................................................7, 11

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) ..........................................................................15

*E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.,*
No. 12–CV–517–LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015) *amended in
part*, No. 12–CV–517–LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015)..............14

*MySpace, Inc. v. GraphOn Corp.,*
672 F.3d 1250 (Fed. Cir. 2012) ..........................................................................10

*Open Text S.A. v. Box, Inc.,*
No. 13–CV–04910–JD, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015)................11

*Planet Bingo, LLC v. VKGS LLC,*
576 Fed. Appx. 1005 (Fed. Cir. 2014)................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Pragmatus Telecom, LLC v. Genesys Telecommunications Labs.*, Inc.,
   No. 14-CV-26-RGA, 2015 WL 4128963 (D. Del. July 9, 2015) ................10, 15

*Smartflash LLC v. Apple Inc.*,
   No. 6:13CV447–JRG–KNM, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)......11

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
   No. CV12–1118–GMS–SRF, 2015 WL 82531 (D. Del. Jan. 6, 2015).............14

*In re TLI Communications LLC Patent Litigation*,
   2015 WL 627858 (E.D.Va. Feb. 6, 2015) .........................................................13

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
   No. 3:12-CV-01065-HZ, 2015 WL 4203469 (D. Or. July 9, 2015) .................15

*TriPlay, Inc. v. WhatsApp Inc.*,
   No. CV 13–1703–LPS, 2015 WL 1927696 (D.Del. Apr. 28, 2015).................11

*Ultramercial Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ..............................................................7, 9, 11

## Statutes

35 U.S.C. § 101 ..............................................................................................*passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6).............................................................................................1

## I.   <u>INTRODUCTION</u>

Defendants ScreenConnect Software, LLC and ConnectWise IT, Inc. (collectively, "ScreenConnect") move to dismiss the Complaint filed by Plaintiff Tridia Corp. ("Tridia") (D.I. 1) ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, because the asserted patent is invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter.  The claims of the asserted patent – U.S. Patent RE38,598 ("the '598 Patent") (Attached as Exhibits A and B) – are directed to the abstract idea of <u>directly sending remote control software to a computer seeking remote access rather than preloading communication software on both computers</u>.  Beyond this abstract idea, Plaintiff's claims contain no meaningful additional limitations that can supply an inventive concept sufficient to render the claims patent-eligible. Rather, the claims merely recite routine and conventional activities and generic computer components (*e.g.* "first" and "second" computers), operations (*i.e.* "receiving" and "transmitting"), and generic software (*i.e.* "remote control module"), none of which is sufficient to confer patent eligibility on the abstract idea.  As the Supreme Court recently held, implementing an abstract idea with generic computer components, even in a particular technology field (*e.g.* remote control software), is not sufficient to transform an abstract idea into a patent-

eligible invention.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

Resolving this issue does not require discovery or claim construction. Because the '598 Patent claims patent-ineligible subject matter, ScreenConnect respectfully requests that the Court conserve judicial resources and prevent unnecessary litigation between the parties by dismissing Tridia's Complaint.

## II.   FACTUAL BACKGROUND

### A.   The '598 Patent.

Tridia filed the Complaint for Patent infringement on April 17, 2015 asserting infringement of claims 1-6, 8, 9, 11-14, 18-25, 46-56, 58-65, 67, 69, 70, and 72 of the '598 patent.  The original patent, U.S. Patent No. 5,909,545, was filed January 19, 1996 and granted June 1, 1999 (hereinafter "Original Patent") (attached as Exhibit C).  The Original Patent underwent reissue proceedings, resulting in the issuance of the '598 patent on September 21, 2004 (Exhibit A). The '598 Patent was further reexamined by the PTO, resulting in a Reexamination Certificate dated May 18, 2010 (Exhibit B).

### B.   The Specification and Prosecution History

As the "Background of the Invention" ("Background") explains, at the time of the invention, selling computer software for home and business applications

was a major market.  Advertising products to potential customers was difficult

due to the limited space on the products.  As a result, developers often could not

list all of the hardware and support software required to execute the advertised

program, which led to unhappy customers.  (Exhibit B, '598 Patent Col. 1:19-34.)

To fully inform the customer about the program being offered, some

manufacturers offered demo versions of the products which could be later

upgraded to the full version or turned off after a specified time.  (*Id.* at Col. 1:34-

50.)  Providing demo versions also had drawbacks.  For example, customers often

had difficulty downloading the software.  (*Id.* at Col. 2:1-12.)  The patent

explains:

> [T]he consumer must still be knowledgeable about the hardware and
> software for his computer system to respond to the information
> prompts generated by the installation program for the demonstration
> product.  This information includes knowledge about system memory,
> operating system version, monitor display size and video capability.
> As a result, the consumer may not be able to install the demonstration
> program properly and the program may abort its execution as a result.
> Just as unproductive, the consumer may become so frustrated during
> the installation procedure that he simply postpones the activation of
> the program and there is no way of ensuring the consumer later
> activates the program for the demonstration.

(*Id.* at Col. 2:53-3:21.)  To solve this problem, remote access software was utilized

to take control of the customer's computer to recreate and assess the issues the

customer was having remotely:

> One way to overcome the limitations still present in the Internet environment is to provide the user with access to the application program without requiring the user to execute the program in her own computer system.  Allowing a user to remotely control an application on another computer coupled through a network is known in the software support and maintenance environment.  Such remote control permits a technician located at a customer service site to execute the application program on a customer's computer from a remote location to try and duplicate the problem the customer is experiencing or to examine certain parameters in the program to ascertain resource problems which may be causing the customer's problems.

(*Id.* at Col. 3:6-3:27.)  The Background explains, however, that such systems required software to be loaded onto both computers, including a technician or a service company, which often led to precisely the same customer installation issues addressed above.  (*Id.* at Col. 3:29-42.)

The patent specification confirms that the ideas of (1) purchasing and transmitting computer software programs through a network (s*ee id.* at Col. 2:1-5 and 19-26), (2) remote control computer applications, protocols, and networks (s*ee id.* at Cols. 3:9-12; 4:64-67; 6:54-5; 8:43-45; 9:39-56; 27-33; 10:55-58), and (3) executing software in a browser using  HTTP protocols (*see id.* at Cols. 4:23-25; Col. 7:28-35; Abstract) were well known concepts.  To obtain the patent, the patentee explained that the "present invention" permits a first computer to initiate communication with a second computer, transport the program component (which

4

supports remote control between the two computers), initiate the program

component, and remotely control an application program at the second computer.

> **This on demand availability of remote control over another
> computer has been heretofore unknown.**

(*Id.* at Col. 9:27-35 (emphasis added).)  In addition, the applicant distinguished its

invention from "remote control software such as pcANYWHERE" stating that "the

claimed invention is directed toward a system that utilizes remote control modules,

or applets, transmitted on demand over a network to provide remote control

functionality without the need to install a remote control software application

program."  (Ex Parte Reexamination Control No. 90/101/092 Response to Final

Rejection August 19, 2009) (Attached as "Exhibit D".)  In summary, the '598

Patent claims are admittedly directed to the abstract idea of <u>directly sending remote</u>

<u>control software to a computer seeking remote access rather than preloading</u>

<u>communication software on both computers</u>.

### C.    Representative Claim 63 Is Abstract.

Independent Claim 63 (particularly broad) is representative.  It recites:

| Claim 63 |
|---|
| A method for providing on demand remote control of an application, comprising the steps of: |
| **receiving** a demand from a **first computer** indicating that a user at the first computer desires remote control over an application at a **second computer**; |

> **in response to the demand, transmitting** to the **first computer** a **remote control module over a network**, and
>
> The **remote control module configured to execute** on the **first computer to enable input-output communications** allowing the **first computer** to remotely control the application at **the second computer system <u>without pre-installing remote control software at the first computer prior to receiving the remote control module.</u>**
>
> Wherein the **remote control module is an applet**.

Claim 63 calls for two computers (a "first" and "second" computer). The two computers are generic computers performing generic and well-known computer activities such as "transmitting" and "receiving" information and otherwise basic computer "handshaking" steps. When the first computer wants to take control of the second computer, a message is sent to the second computer requesting control, and in response, a control module is sent to the first computer (*i.e.* "remote control module" and "applet"). The control module enables the remote communication, *i.e.* "input-output communications." Control of the second computer is achieved "**<u>without pre-installing remote control software at the first computer prior to receiving the remote control module</u>**." (*Id.* (emphasis added).) In essence, claim 63 purported invention is <u>directly sending remote control software to a computer seeking remote access rather than preloading communication software on both computers</u>.

III.   **ANALYSIS**

   A.   **Legal Standard.**

   Not only is invalidity under 35 U.S.C. § 101 a question of law, but a district court can properly conclude that claims are not patent-eligible under § 101 at the pleading stage.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming district court's grant of a motion to dismiss for failure to state a claim because the claims of the asserted patent were invalid as patent ineligible under § 101); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (stating that "[p]atent eligibility under § 101 presents an issue of law").  Evaluating patent claims for eligible subject matter at the outset of a case conserves judicial resources.  *Ultramercial Inc. v. Hulu, LLC,* 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring) ("Failure to recite statutory subject matter is the sort of basic deficiency that can and should be exposed at the point of minimum expenditure of time and money by the parties and the court.").

   Under § 101, an invention is eligible for patenting if it falls within one of four recognized categories of patent-eligible subject matter:  a process, machine, manufacture, or composition of matter.  For more than 150 years, however, the Supreme Court has recognized that this statute "contains an important implicit

exception:  [1]aws of nature, natural phenomena, and abstract ideas are not

patentable." *Alice Corp. Pty. Ltd v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354

(2014).  Recently, the Supreme Court established a two-step framework to

distinguish patent-ineligible concepts – *i.e.*, laws of nature, natural phenomena,

and abstract ideas –from patent-eligible applications of those concepts.  *Id* at

2355.  In the first step of the *Alice* test, the court "determine[s] whether the claims

at issue are directed to patent-ineligible concepts."  *Id.*  If so, in the second step,

the court searches for an "inventive concept," *i.e.*, an element or combination of

elements that is sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the ineligible concept itself."  *Id.*  At its

core, § 101 prohibits patenting "building blocks of human ingenuity," because

doing so would "risk disproportionately tying up the use of the underlying ideas."

*Id.* at 2354.

　　*Alice* and more recent cases identify the types of claim elements that ***cannot***

supply the "inventive concept" for patent eligibility.  For example, patent claims

that recite an abstract idea accompanied by instruction to "apply it" are

insufficient to transform a patent-ineligible abstract idea into a patent-eligible

invention.  *Id.* at 2357.  Similarly, "merely instruct[ing] the practitioner to

implement the abstract idea with routine, conventional activities [] is insufficient

to transform the patent-ineligible abstract idea into patent-eligible subject matter."
*Ultramercial, Inc.,* 772 F.3d at 716.  Also, "the mere recitation of a generic
computer" or computer components does not confer patent eligibility to an
abstract idea. *Alice,* 134 S. Ct. at 2357-58.  For example, "logic for manipulating
[data]" and "a server" are generic computer components that perform conventional
activities. *Accenture,* 728 F.3d at 1338 (finding patents reciting "logic for
manipulating the data" and "a server component" invalid under § 101).  Likewise,
"restrictions on public access[] and use of the Internet does not transform an
otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc.,* 772
F.3d at 716.  The use of a "'network' . . . is not even arguably inventive."
*buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see also*
*Bascom Research, LLC v. LinkedIn, Inc.,* No. 12-CV-06293-SI, 2015 WL 149480,
at *12 (N.D. Cal. Jan. 5, 2015) (granting summary judgment of invalidity under
§ 101, recognizing that "courts have held that the use of a computer network and a
server is not inventive.").

Courts that have further rejected claims directed to transmitting information
automatically rather than in person or via telephone.  For example, using a web
page to directly and automatically initiate a phone call, rather than communicating
with customer service in person or on a telephone, is merely taking a patent-

ineligible idea and saying "apply it" to a computer or with servers.  *Pragmatus Telecom, LLC v. Genesys Telecommunications Labs.*, Inc., No. 14-CV-26-RGA, 2015 WL 4128963, at *6 (D. Del. July 9, 2015).

Likewise, using a generic computer to perform a manual task more efficiently and accurately than a human is not a patentable idea, and courts have routinely invalidated patents asserting such claims.  *See, e.g., MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012) ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101.").

### B.  The '598 Patent Fails the *Alice* Test

The '598 patent claims are invalid under § 101 for claiming patent-ineligible subject matter.  The Supreme Court held in *Alice* that claims of a patent are invalid if they (1) are "directed to patent-ineligible concepts," such as an "abstract idea," and (2) fail to include an "'inventive concept"—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice,* 134 S. Ct. at 2354-55.

### 1.   The '598 Patent Fails Step 1 of the *Alice* Test:  All Asserted Claims Are Directed to An Abstract Idea

The '598 patent claims are all directed to an abstract idea, <u>directly sending remote control software to a computer seeking remote access rather than preloading remote communication software on both computers.</u>

The first step of the *Alice* analysis requires the Court to ask: what are the claims generally trying to achieve.  *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F.Supp.3d 974, 993 (C.D. Cal. 2014); *see also Smartflash LLC v. Apple Inc.*, No. 6:13CV447–JRG–KNM, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015) ("The court must first determine the purposes of the claimed inventions.").  The "*Alice* step one analysis can turn on how far a court goes in peeling back a claim's limitations while trying to divine what the claim is really directed to," *TriPlay, Inc. v. WhatsApp Inc.*, No. CV 13–1703–LPS, 2015 WL 1927696, at *9 (D.Del. Apr. 28, 2015), but the claim's purpose should be stated at a "reasonably high level of generality."  *Open Text S.A. v. Box, Inc.*, No. 13–CV–04910–JD, 2015 WL 269036, at *2 (N.D. Cal. Jan. 20, 2015) (citation omitted); *see also Ultramercial*, 772 F.3d at 715 (holding that "the concept . . . describes only the abstract idea of showing an advertisement before delivering free content" despite presence of other limitations); *Content Extraction,* 776 F.3d at 1347 (characterizing abstract idea as "(1) collecting data, (2) recognizing

certain data within the collected data set, and (3) storing that recognized data in a memory" despite claim's recitation of specific limitations, such as a scanner).

As addressed above, the specification of the '598 patent concedes that the concepts of (1) remote control applications, networks, and protocols (s*ee* Exhibit B, '598 Patent, Cols. 3:9-12 and 28-30; 4:64-67; 6:54-5; 8:43-45; 9:39-56; 27-33; 10:55-58), (2) purchasing and transferring software over a modem or telephone wire (*see id.* at Col. 2:1-5 and 19-26), and (3) executing software programs on an internet browser using HTTP protocols (*see id.* at Cols. 4:23-25; Col. 7:28-35; Abstract) were well known at the time of the '598 invention. Indeed, as explained in detail above, the patentee sought to distinguish the "present invention" from prior art systems that utilized preloaded remote control software at both communication links and summarized the "system and method of the present invention" as follows:

> [to]permit, a first computer to initiate communication with a second computer; transport the program component which supports remote control between the two computers, activate the program component and remotely control an application program at the second computer.
>
> ***This on demand availability of remote control over another computer has been heretofore unknown.***

*Id.* at Col. 9:27-35 (emphasis added.) Lastly, the patentee confirmed this understanding when distinguishing the invention from the prior art.

> [T]he claimed invention is directed toward a system that utilizes
> remote control modules, or applets, transmitted on demand over a
> network to provide remote control functionality ***without the need to
> install a remote control software application program.***

Exhibit D at 4 (emphasis added).  In short, after peeling back the generic and well

known claim limitations found in the Asserted Claims and looking past the

"dense language" in the patents, it is clear that all asserted claims are focused on

directly sending remote control software to a computer seeking remote access

rather than preloading remote communication software on both computers.  *See*

*In re TLI Communications LLC Patent Litigation*, 2015 WL 627858 at *6

(E.D.Va. Feb. 6, 2015) (explaining that "court must be careful to avoid allowing

the typically convoluted language – 'patent-ese' – to obfuscate the general

purpose and real essence of software patent claims.").



**Figure 1**:  Comparison of admitted prior art vs. the '895 abstract idea.

The essence of the '598 invention simply replaces the prior manual step of installing software at both computers, to transmitting and executing software on another computer automatically, illustrated above in Figure 1.

The invention simply speeds up the prior art remote control process by taking human activity out of the equation. *See E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc*., No. 12–CV–517–LM, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015) *amended in part*, No. 12–CV–517–LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015) ("The lesson of *Alice* and . . . other cases . . . is that when the alleged innovation involves the use of a generic computer to do what such computers typically do, *i.e.*, speed up a process by eliminating the need for human activity, that innovation is not an invention eligible for patent protection."); *Tenon & Groove, LLC v. Plusgrade S.E.C*., No. CV12–1118–GMS–SRF, 2015 WL 82531, at *5 (D. Del. Jan. 6, 2015) *report and recommendation adopted*, No. CV 12–1118–GMS–SRF, 2015 WL 1133213 (D. Del. Mar. 11, 2015) ("However, the specifications themselves reveal that the processes may be performed mentally by a human, expressly stating that the inventions "eliminate [ ] manual, time-consuming processes and replace [ ] those with an efficient, automatic process . . . .  The Federal Circuit has stressed that merely using a computer to perform more efficiently what could otherwise be accomplished manually does not confer patent-

eligibility.") (citing *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can*., 687 F.3d 1266, 1279 (Fed. Cir. 2012) (additional citation and quotation marks omitted)); *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 3:12-CV-01065-HZ, 2015 WL 4203469, at *14 (D. Or.  July 9, 2015) (migrating computer settings was unpatentable because it could be performed manually).

Because the '598 patent merely uses computer technology to automate or otherwise improve upon the manual process of physically installing and executing remote control software and otherwise using a computer to perform more efficiently what could otherwise be accomplished manually, the '598 patent meets the abstract idea test of the *Alice* framework.  *See e.g. Pragmatus Telecom, LLC v. Genesys Telecommunications Labs.*, Inc., No. 14-CV-26-RGA, 2015 WL 4128963, at *6 (D. Del. July 9, 2015) (automating call process an abstract idea).

Moreover, a common and telling feature of an abstract claim is that its limitations can be performed by a person with pen and paper, without the use of a computer.  *See, e.g., CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1372 (Fed. Cir. 2011) (finding claims for using the internet to identify credit card fraud were unpatentable because the claim "can be performed in the human mind, or by a human using a pen and paper."); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005 (Fed. Cir. 2014) (finding claims abstract

because they "consist[] solely of mental steps which can be carried out by a human using pen and paper").  The same general process found in Claim 63, for example, can be performed manually without the aid of a computer, which confirms the abstract nature of the asserted claims.  For example, as illustrated below, each step of claim 63 can be performed in a non computer setting:

| Claim Language | Human Steps |
| --- | --- |
| Claim 63:  A method for providing on demand remote control of an application, comprising the steps of: | |
| Receiving a demand from a first computer indicating that a user at the first computer desires remote control over an application at a second computer; | User A sitting in front of his computer calls User B on the telephone who is also sitting in front of his computer and asks user B if User A can access User B's computer. |
| In response to the demand, transmitting to the first computer a remote control module over a network, and | User B agrees and hangs up the phone. User B grabs a copy of the "remote control" software sitting on top of his computer and walks over to User A's apartment and places a copy of the "remote software" onto User A's computer. |
| The remote control module configured to execute on the first computer to enable input-output communications allowing the first computer to remotely control the application at the second computer system without pre-installing remote control software at the first computer prior to receiving the remote control module. | When loaded onto User A's computer, the software will allow User A to create a remote communication link with User B. |

| Wherein the remote control module is an applet. | The software program provided to User A is an applet program. |
|---|---|

In short, while User A and User B both have computers in the example above, the act of transmitting the software from one user to another and installing it (the core of the invention) can be performed manually by human beings.

**2.   The '598 Patent Fails Step 2 of the Alice Test:  The Asserted Claims Have No Inventive Concept**

The claims are directed to the abstract idea of <u>directly sending remote control software to a computer seeking remote access rather than having preloaded remote communication software on both computers</u>.  But the '598 Patent also fails the second prong.  This step requires the Court to search for an "inventive concept, *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Alice,* 134 S. Ct. at 2355.  In *Alice,* the Supreme Court instructed that neither the implementation of an abstract idea using generic computer components nor limitation to a particular technological field is sufficient to supply an inventive concept beyond the abstract idea.  *Alice,* 134 S. Ct. at 2358; *see also Bancorp Servs., LLC v. Sun Life Assur. Co. of Can*., 687 F.3d 1266, 1279 (Fed. Cir. 2012) (same).

Stripped of the abstract idea of "<u>directly sending remote control software to a computer seeking remote access rather than having preloaded remote communication software on both computers</u>" claim 63 requires only generic computers (*e.g.* "first" and "second" computer), well-known computer activities (*e.g.* "transmitting" and "receiving,"), and generic software (*e.g.* a control module "applet") that enables input/output communications, an task germane to all "remote control communications." "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2358 (quoting Mayo, 132 S. Ct. at 1297).

The rest of the Asserted Claims suffer from the same issues. The claims cover the same basic claim in either method or system form. The claims all generally disclose well known software modules (AIM and RDM) that allow communication to take place between two remote computers, including input/output and control protocols, input/output and control messages, the conversion of such messages, and/or the interaction with applications. As explained above, remote control protocols were well known at the time of the '598 invention. *See* Exhibit B, '598 Patent, Cols. 3:9-12 and 28-30; 4:64-67;

6:54-5; 8:43-45; 9:39-56; 27-33; 10:55-58.  Likewise, claims that require the execution of the remote control module "without installing remote control software on the first computer" or "wherein the remote control module can be interpreted by a browser" were also well known, including executing software programs on internet browsers using HTTP protocols.  *See id.* at Cols. 4:23-25; Col. 7:28-35; Abstract, or utilizing JAVA interpreters. *See id.* Abstract, Col. 4:35-36; 5:23-28; 10:26-29.

All asserted claims, therefore, merely append generic computer components and functionality and thus fail to add any meaningful inventive concepts.  The claims are patent ineligible because they add well understood remote communication protocols to the patent-eligible application of the idea.

## IV.   <u>CONCLUSION</u>

Because the Asserted claims of the '598 Patent are not directed to patentable subject matter under § 101, ScreenConnect respectfully requests that the Court grant this motion to dismiss for failure to state a claim upon which relief can be granted.

Dated: August 10, 2015                 Respectfully submitted,

                                       /s/  Jeffrey J. Toney
                                       Jeffrey Toney, Esq.
                                       Georgia Bar No. 714615
                                       KASOWITZ, BENSON, TORRES &
                                             FRIEDMAN LLP
                                       1349 West Peachtree Street, N.W.
                                       Suite 1500
                                       Atlanta, Georgia 30309
                                       Telephone: (404) 260-6080
                                       Facsimile: (404) 260-6081

                                       *Attorney for Defendants
                                       ScreenConnect Software LLC and
                                       ConnectWise IT, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1(c) and 7.1.D.

This 10th day of August, 2015.

/s/  *Jeffrey J. Toney*
Jeffrey J. Toney
Georgia Bar No. 714615

## <u>CERTIFICATE OF SERVICE</u>

This is the certify that on this 10th day of August, 2015, I electronically filed the within and foregoing **DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> Douglas D. Salyers, Esq.
> Georgia Bar No. 623425
> TROUTMAN SANDERS LLP
> Bank of America Plaza
> 600 Peachtree Street NE, Suite 5200
> Atlanta, GA 30308-2216
> doug.salyers@troutmansanders.com

This 10th day of August, 2015.

> /s/  *Jeffrey J. Toney*
> Jeffrey J. Toney
> Georgia Bar No. 714615